THE PEOPLE OF THE STATE OF NEW YORK ex rel. ROCHESTER TELE-
PHONE CORPORATION, Relator, against WILLIAM H. WOODWORTH,
as Assessor of the City of Rochester, et al., Respondents.

Supreme Court, Monroe County, October 10, 1944.

*Glenn L. Buck* and *Charles B. Forsyth* for William H. Wood-
worth, respondent appearing specially.

*Goodwin, Nixon, Hargrave, Middleton & Devans* for relator.

*Harry Rosenberg, Monroe County Legal Adviser,* for Clar-
ence A. Smith and James L. Wiles, respondents.

CRIBB, J. Counsel for the City of Rochester, appearing
specially for the purposes of this motion, in behalf of respond-
ent William H. Woodworth, as Assessor of the City of Rochester,
seeks an order dismissing the petition and writ of certiorari
as to said Woodworth as Assessor of the City of Rochester, on
the grounds that said Woodworth as Assessor of the City of
Rochester is not a proper or necessary party to this proceeding,
and that the court has no jurisdiction over him as such assessor.

Two questions are presented. First: Was the county assess-
ment roll of city properties, the review of which is sought by
the relator, made by Woodworth in his capacity, as *Assessor of
the City of Rochester,* or was it made by him as Assessor acting
for and in behalf of the County of Monroe? Second: If it is
determined that Woodworth *was* acting in his capacity as *City
Assessor* in making the County Assessment Roll, was the service
of one copy of the writ upon him personally, rather than service
of three copies upon the City Clerk as provided by section 291
of the Tax Law, sufficient to give this court jurisdiction over
Woodworth as City Assessor?

Section 208 of chapter 755 of the Laws of 1907 (Charter of the City of Rochester), after prescribing certain duties for the city assessors, reads as follows: "The assessors must, on or before the first day of October in each year, unless the time is further extended by resolution of the board of supervisors, certify and deliver to the supervisors of the several wards of the city, for the use of the Board of Supervisors, a correct copy of said tax rolls prepared for the current year as they then exist, including the additions, amendments and corrections thereto; and the board of supervisors *must pay to the city of Rochester for the copy* or copies for their use in the same manner as payment is made to the supervisors of the several towns for the town rolls." (Italics supplied.)

Chapter 720 of the Laws of 1944, effective April 10, 1944, repealed the above section and inserted in the City Charter sections 188-a and 188-b which read as follows:

" § 188-a. *Annual county assessment rolls of city properties.* The assessor of the City of Rochester shall annually at the same time and place that he prepares the annual tax rolls of the city of Rochester make copies thereof for the use of the board of supervisors of the county of Monroe for levying county taxes, and these rolls so prepared for the board of supervisors shall be known as annual county assessment rolls of city properties; and they shall contain as near as can be ascertained all the real property in the city of Rochester subject to taxation and the value of the same as determined by the assessor, except as the fixing of valuation is by law otherwise provided.

" After said annual county assessment rolls of city properties have been prepared, the assessor or one of his deputies shall be at his office to hear the allegations and objections of all persons interested in the assessments contained therein, for which at least ten days previous notice shall be given by publication in the daily papers published in the city of Rochester. Such hearing by the assessor shall be had at the same time and place that the assessor hears the allegations and objections to the annual city tax rolls of the city of Rochester and said publication may be included in the same publication giving notice of the hearing of the allegations and objections to the annual city tax roll of the city of Rochester. At the time and place designated in said notice and for ten consecutive business days thereafter, the assessor or his deputies shall hear allegations and objections to said annual county assessment rolls of city properties, and said annual county assessment rolls of city properties must be open to examination and inspection by all persons

interested between the hours of nine and twelve in the morning and two and four in the afternoon of each of said days except Saturday afternoon.

" The assessor may add to the annual county assessment rolls of city properties any real property omitted from the assessment rolls of the previous year, at such valuation as he deems proper.

" All complaints in regard to assessments shall be submitted in writing.

" After having heard and examined into the complaints made to assessments on the annual county assessment rolls of city properties, the assessor shall make such corrections and amendments as the facts established may require, and he shall attach to each of the annual county assessment rolls of city properties an oath substantially in the following form:

" ' I,................., the assessor of the city of Rochester, New York, do depose and swear that I have set down in the foregoing assessment roll all of the real estate situated in the...... ward of the city of Rochester, according to my best information; and that, with the exception of those cases in which the value of said real estate has been changed by reason of proof produced before me, and with the exception of those cases in which the value of any special franchise has been fixed by the state tax commission, I have estimated the value of said real estate at the sums which I have decided to be the full value thereof.'

" § 188-b. *Completion of annual county assessment rolls of city properties.* The assessor shall complete the annual county assessment rolls of city properties on or before July first of each year and attach to said rolls the oath required to be attached thereto, and at the same time shall attach to each of said rolls a certificate substantially in the following form:

" ' I,................., assessor of the city of Rochester, do hereby certify that the annexed is the completed annual county assessment roll of city properties and is a full and correct copy of the annual city tax roll of the ...... ward prepared in the year ...... for the city of Rochester, New York, with all additions, amendments and corrections thereto as of this date. Dated: ............ 19 .....'

" After having attached said oath and said certificate, the assessor shall on or before the first day of July in each year deliver to the clerk of the board of supervisors of the county of Monroe, for the use of the board of supervisors, the annual county assessment rolls of city properties prepared in the current year as they then exist, including additions, amendments

and corrections thereto. Said rolls shall remain open for public inspection at Monroe County Court House until the same with the warrants attached thereto are delivered to the director of finance of the county of Monroe. The board of supervisors of the county of Monroe *shall pay to the city of Rochester* for the copy or copies made for their use in the same manner as payment is made to the supervisors of the several towns for the town rolls." (Italics supplied.)

It appears that Woodworth as City Assessor made, certified and delivered to the clerk of the Monroe County Board of Supervisors the annual county assessment roll for 1945 in conformity with the statutory provisions quoted.

In his brief in support of this motion counsel for the City of Rochester states: "Neither the Corporation Counsel nor the City of Rochester has any authority to expend any of the city's funds in defending Mr. Woodworth individually or in his capacity as Assessor in preparing and certifying the county assessment rolls. The amounts which may be expended in the defense of this proceeding and others which may be brought in future years will amount to many thousands of dollars." From this it is obvious that the City seeks to shift from itself to Monroe County the burden of defending Woodworth, either individually or in his official capacity as City Assessor.

In this case the statute creates the office of City Assessor and in addition to prescribing the duties to be performed for the City of Rochester charges the incumbent of that office with certain duties which are clearly for the benefit of Monroe County, and further provides that the County shall pay, not the City Assessor, but the City of Rochester for such services.

Statutes frequently make provisions whereby a copy of an assessment roll for one tax district, containing property which is within the boundary lines of another tax district, is furnished the latter district. This obviously is done to avoid duplicity of work and expense to the district so receiving the roll. While the statute under discussion designates the incumbent of the office of assessor in the City of Rochester as "assessor of the city of Rochester", it nevertheless prescribes duties the performance of which is for the benefit of the County of Monroe. While the County is not required to compensate such City Assessor for this additional work individually, it indirectly contributes to his salary by being compelled to pay to the City of Rochester for the county assessment roll an amount which the statute fixes by providing that the Board of Supervisors "shall pay to the city of Rochester for the copy or copies made

for their use in the same manner as payment is made to the supervisors of the several towns for the town rolls.''

In *Matter of Rohr* v. *Kenngott* (288 N. Y. 97, 105), followed in *Matter of Mercer* v. *Dowd* (288 N. Y. 381), in determining the status of the petitioner under civil service, the court said: '' The duties of the position, as defined by some statute or by an ordinance or resolution of a body duly authorized by statute, not its name, determine the status of the position.'' It seems that the same rule may be applied in the instant case. While not named as Assessor for Monroe County of properties within the City of Rochester the City Assessor in fact is charged by statute with the duties of such an officer. I therefore hold that the county assessment roll of Rochester City properties, which is the subject of this certiorari proceeding, while made by Woodworth under the statutory designation as '' assessor of the city of Rochester '', was in fact made by him as Assessor acting for and in behalf of the County of Monroe. It is to be noted that the relator brings this proceeding against '' William H. Woodworth, as Assessor of the City of Rochester, New York, *in preparing the 1945 Monroe County Assessment Rolls of City properties* '' (italics mine) *et al.*, and he was served personally with a copy of the writ in that capacity. Relator could not otherwise designate the capacity of Woodworth since the statute only designates him as '' assessor of the city of Rochester.'' It therefore follows that the City of Rochester is not required to file a return to the writ, and its motion to dismiss the petition and writ of certiorari as to said Woodworth as Assessor of the City of Rochester is granted, with ten dollars costs, but such determination does not dismiss said petition and writ against said Woodworth as assessor *de facto* of Monroe County.

In view of the foregoing determination it is not necessary to discuss the second ground urged for the motion which relates to the manner of service of the writ.